BERNICE B. DONALD, Circuit Judge,
dissenting.
The majority affirms the lower court’s grant of summary judgment on grounds that the union’s adjudication is entitled to deference and was not unreasonable. I respectfully dissent because, under this circuit’s case law and the relevant statutory framework, no such deference is warranted. Since summary judgment was granted before the parties had engaged in discovery and because material disputes of facts remain, the proper course for this court would be to reverse and remand for further proceedings.
The majority’s decision is predicated upon a series of questionable premises. First, the opinion characterizes the Reorganization Agreement as an internal governing document, the legal equivalent of a constitution, rather than a contract between two unions. While a union constitution is a “contract between unions” for purposes of the LMRA, United Assoc. of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the U.S. and Canada v. Local 334, 452 U.S. *473 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), it does not follow that a contract between unions is a constitution whose interpretation requires deference from the federal courts.
The Reorganization Agreement at issue is a pact between the two unions setting forth the responsibilities of the parties during the period before and immediately after their merger. The Reorganization Agreement itself specifically provides that the two unions “shall be governed by a Temporary Constitution and Bylaws to be imposed by the SEIU International President.” RA, ¶ 9. Since the contract identifies the external document that will serve as the constitution, the contract cannot itself be the constitution.
The majority does not cite to a single Sixth Circuit precedent that applies deference to a unions interpretation of a “governing document” where the document is not the union constitution itself, nor could I find such a case. The eases relied on by the majority and the district court, Vestal v. Hoffa, 451 F.2d 706, 709 (6th Cir.1971), and Taylor v. Great Lakes Seamen’s Union, Local 5000, 701 F.2d 590, 592 (6th Cir.1983), did not involve documents other than the union’s constitution. The disputes in those cases were related to specific language contained in the union constitution; no documents beyond the constitution itself were considered. Taylor, 701 F.2d at 591; Vestal, 451 F.2d at 706-08.
Likewise, the other Sixth Circuit cases cited in the opinion do not support the majority’s position. Babler v. Futhey, 618 F.3d 514 (6th Cir.2010), analyzes whether a union executive board’s interpretation of internal constitutional provisions in a disciplinary proceeding are reasonable. Id. at 522-23. The Babler court never mentions applying deference to the interpretation of any document other than a union’s internal constitution. The final Sixth Circuit decision cited, Holmes v. Donovan, 984 F.2d 732 (6th Cir.1993), likewise refers only to “the interpretation and application of a union’s constitution.” Id. at 738.
The majority relies heavily on a Ninth Circuit case which does implicitly equate the term “governing document” with “constitution.” Even this case, however, falls short of finding deference due to a union’s interpretation of a merger agreement. The Ninth Circuit was confronted with whether a union’s interpretation of an “Affiliation Agreement,” through which a local union became affiliated with the United Brotherhood of Carpenters and Joiners of America, “is subject to the high degree of deference due a union’s construction of its own rules, regulations and constitution, or whether the affiliation agreement is to be interpreted by the courts like any other contract without such deference.” United Bhd. of Carpenters and Joiners of Am., Lathers Local 42-L v. United Bhd. of Carpenters and Joiners of Am., 73 F.3d 958, 959-60 (9th Cir.1996). Although the case for deference was at least as strong in the Ninth Circuit case as it is in the case before this court, the court declined to decide the issue, because it reached “the same result without giving deference.” Id.
The majority’s deference to the union’s interpretation of its “governing documents” is thus without a proper legal foundation. In expanding the application of deference to a non-constitution contract, the court is charting new ground, unsupported by any precedent.
Even if, however, the Reorganization Agreement could be validly deemed the equivalent of a constitution, I would disagree with the majority’s holding because of its second foundational premise: that the union president’s designee “interpreted” this agreement. In fact, the Desig-nee’s decision upholding the termination of *474 Appellants did not involve the “interpretation” of that document or the actual union constitution, as there was no ambiguity in those documents to resolve or interpret. Instead, the Designee merely concluded that the Appellants had breached their fiduciary duties to the union and were therefore subject to termination “for cause.” Although I agree with the majority that this finding of fact appears to have been reasonable, the decision does not warrant deference by the court.
While the district court, and the majority, erred in viewing the Designee’s decision as the interpretation of the union’s constitution, the more fundamental error in the district court’s judgment, implicitly endorsed by the majority opinion, lies in its treatment of Appellants’ action as an appeal of the union’s decision. This view is evidenced by the district court’s statement that “[t]he Court is not compelled to conduct a de novo review of the [union’s] decision.” This misunderstanding of the nature of the ease before it is grounded in the court’s failure to properly distinguish between two related statutes: the Labor-Management Reporting and Disclosures Act (“LMRDA”) and the Labor Management Relations Act (“LMRA”).[2]
While similarly titled, the statutes are very different in their scope and grant of jurisdiction to the courts. To appreciate the important differences between the two statutes, we look first to the LMRDA, which does not govern the instant case.
Title I of the LMRDA sets forth certain fundamental rights guaranteed to all union members and provides a private right of action for infringement of those rights. 29 U.S.C. §§ 411-12 (2006). Typically central suits brought under LMRDA is § 411(5): “No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization ... unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.” Pursuant to the guarantee of a “full and fair” disciplinary hearing, the charging party must provide some evidence at the disciplinary hearing to support the charges made. Int’l Bhd. of Boilermakers v. Hardeman, 401 U.S. 233, 246, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971). A district court’s role in this context is solely to ensure that there was no denial of due process, i.e., that the union member “was afforded a full and fair hearing at which some evidence of his guilt on a majority of the specified charges was adduced.” Charron v. AFL-CIO, 470 F.2d 156, 158 (6th Cir.1972). Thus, in a “full and fair hearing” suit brought under the LMRDA, a district court acts in a limited, quasi-appellate capacity.
In contrast, § 301 of the LMRA provides as follows:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined by this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a) (2006) (emphasis added). Federal district courts have explicit authority under the LMRA to try breach of contract suits, not only by applying tra *475 ditional rules of contractual interpretation but also by fashioning a body of federal law for enforcement of union contracts. See Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (discussing the broad authority of the courts in such suits); see also UAW v. Yard-Man, Inc., 716 F.2d 1476 (6th Cir.1983). Under the LMRA, a district court serves as a full trial court in every regard, responsible for the resolution of contractual disputes. Unlike under the LMRDA, it is not relegated to a constrained, quasi-appellate function.
Consequently, there is simply no basis in the law for the constraints the district court placed upon itself in the present case. Giving deference to the disciplinary decision of the Designee and limiting the court’s authority to a determination of reasonableness would have been appropriate if Appellants had challenged the disciplinary decision directly. Such an action would have been appropriately brought under the LMRDA, pursuant to the district court’s role under that statute to ensure that there was no denial of due process.
However, the present suit for violation of a contract between two unions, to which Appellants are third-party beneficiaries, should be tried like any other contract-based suit brought under § 301 of the LMRA. Contrary to the majority’s assertion, Appellants’ action is not a challenge to the union’s interpretation of its constitution, but a suit for breach of contract, quite independent from the internal proceedings which came before it. Even if there were issues of interpretation of the union’s constitution at issue here, which there are not, the court, while giving due deference to those interpretations, would nonetheless still be required to resolve the claims of breach of contract before it.
The central issue here is whether Appellants engaged in wrongdoing sufficient to warrant termination under the Reorganization Agreement. It appears that at least some of the facts pertinent to this issue are in dispute, making summary judgment inappropriate at this stage of the proceedings. Accordingly, I respectfully dissent.

. Both the parties and the district court acknowledge that the Plaintiffs' claims are governed by § 301 of the LMRA.